William POPE, Petitioner-Appellee,

v.

John W. TURNER, Warden, Utah State Prison, Respondent-Appellant.

No. 71–1584.

United States Court of Appeals, Tenth Circuit.

June 14, 1972.

David R. Irvine, Asst. Atty. Gen., Salt Lake City, Utah (Vernon B. Romney, Atty. Gen., and David S. Young, Chief Asst. Atty. Gen., Salt Lake City, Utah, on the brief), for respondent-appellant.

Donald M. Burkhardt, Denver, Colo., for petitioner-appellee.

Before LEWIS, Chief Judge, and HOLLOWAY and BARRETT, Circuit Judges.

LEWIS, Chief Judge.

This case reaches us for the second time. In our first consideration of the case, Pope v. Turner, 426 F.2d 783, we remanded Pope's petition for a writ of habeas corpus to the District Court for the District of Utah with directions to that court to conduct an evidentiary hearing to determine whether Pope was unconstitutionally held in state custody by the respondent warden. Based on contentions made by petitioner at the hearing on remand, the trial court granted the writ and this appeal by the Utah State warden followed. The issues now presented to us are in no way related to those earlier specifically considered.

Pope is presently in custody as a result of a conviction for murder. This charge was first made against him

through a complaint handled by the Salt Lake County Attorney and filed in the City Court of Salt Lake City on July 7, 1964. The complaint jointly charged Pope and one Sandra Shaw with murder in the first degree, a capital offense.[1] Apparently as the result of plea bargaining between the county attorney and defense counsel, the charge lodged against Shaw was dismissed at the preliminary hearing and Pope waived his preliminary hearing, the State consenting thereto, as to the crime of voluntary manslaughter, and included offense, and the city court bound Pope over to answer to the charge of voluntary manslaughter in the district court.

As we have noted, the prosecution then became the responsibility of the district attorney. That officer, dissatisfied with the procedure at preliminary hearing, did not file an information but by motion directed to the district court represented that he had made an independent investigation of the facts and that evidence was found of premeditation and other elements of first degree murder and asked that the case be remanded to the city court with instructions to the county attorney to refile the charge of murder in the first degree. Thereafter, on November 25, 1964, the district court entered the following order:

IT IS HEREBY ORDERED that the above-entitled matter be remanded to the Salt Lake City Court and the Salt Lake County Attorney is hereby directed to file a new complaint charging the said William Pope with the crime of Murder in the First Degree

and further direct[ed] that a preliminary hearing be had on said charge.

On that same day, a new complaint, charging Pope only, was filed for first degree murder. New counsel was appointed for Pope, a preliminary hearing was held, and Pope was subsequently bound over to the district court to answer to murder in the first degree. He was ultimately tried and convicted of that offense and sentenced to life imprisonment on recommendation of the jury.

From these undisputed procedural facts the federal district court concluded that the state district court had no power or jurisdiction under Utah statutory law, or at all, to enter the order directing the renewed prosecution of Pope and that consequently Pope was denied the federal right to due process. The State vigorously contends that the state order is in complete accord with Utah statutory law and valid in every respect. Since this contention not only presents important questions of statutory interpretation of state law in the first instance but also may well contain overtones of state constitutional questions regarding judicial power directed against inferior courts and elected public officials within the State (and possibly a side issue of plea bargaining) we think these issues should be presented to the Supreme Court of Utah for that court's consideration.[2] The case presents a classic example of when petitioner should be required to exhaust his state remedies in accord with 28 U.S.C. § 2254, a procedure which our earlier mandate perhaps discouraged.

---

1. Utah does not yet have a unified system of prosecution. Felony complaints in Salt Lake County usually originate with the approval of the county attorney who carries the prosecution through the preliminary hearing stage before a committing magistrate, usually the city court, a court of limited jurisdiction having the specific power to sit as a committing magistrate. Upon a finding of sufficient cause by the magistrate the accused is held to answer to the charge before the district court, a court of general jurisdiction. Responsibility for the prosecution then rests with the district attorney to final judg-

ment and is initiated by the filing of an information. Appeals are the responsibility of the attorney general. As will appear, this system of divided responsibility created, in part, the unusual issue we here consider.

2. The State appears to rely solely on the provisions of §§ 77-17-2 and 77-17-3 of U.C.A. (1953). The cited statutes pertain, if strictly construed, to decisions of the district attorney not to prosecute and to amendments to informations. Their application to judicial orders directing a prosecution to be renewed ab initio is presently unclear to us.

The federal district court also granted the writ upon the additional or alternative ground that Pope has been denied the effective assistance of counsel because the order of the state district court was entered ex parte.[3] Consideration of this aspect of the case would appear proper only if the action of the state court was valid in all respects and resulted in one continuous prosecution. Again, the Supreme Court of Utah should give the issue first consideration.

The case is remanded to the district court with instructions to dismiss without prejudice for failure to exhaust state remedies.

3. The State in its brief describes the order as ex parte; petitioner's trial counsel represented to the federal trial court that "what I can find from the record over there apparently this was argued at the time"; the record before us is silent as to whether the motion was considered ex parte or adversarily. Although the state trial judge and his reporter are now dead, petitioner's original trial counsel and the district attorney are available as witnesses. Should the fact of whether the order was ex parte become or be considered as dispositive of petitioner's rights their testimony should be required.