**William POPE, Petitioner,**

v.

**Samuel SMITH, Warden, Respondent.**

**Civ. No. C 74–111.**

United States District Court,
D. Utah, C. D.

April 3, 1974.

Constance Kay Lundberg, Salt Lake City, Utah, for petitioner.

M. Reed Russell, Justice Div., Utah Atty. Gen. Office, for respondent.

## ORDER AND MEMORANDUM DECISION GRANTING LEAVE TO PROCEED IN FORMA PAUPERIS TO FILE A PETITION FOR HABEAS CORPUS

RITTER, Chief Judge.

The court having examined the petition for a writ of habeas corpus submitted by William Pope, together with the motion for leave to proceed in forma pauperis and the required affidavit of impecuniosity, hereby grants leave to proceed in forma pauperis for the reasons stated below.

Pope is detained and in custody of Samuel Smith, Warden of the Utah State Prison, by virtue of conviction on a first degree murder charge, following trial by jury in February, 1965, in Third Judicial District Court in Salt Lake County, Utah.

In August, 1965, upon receipt of correspondence from Pope alleging that he was imprisoned in violation of his federal constitutional rights, this court appointed an experienced attorney and directed him to confer with Pope, review the records of the Third Judicial District Court, and report to the court concerning whether Pope's claims were cognizable in federal court in a petition for habeas corpus relief. The appointed attorney studied and investigated the files and records of the case, but due to illness failed to make a formal report to the court.

In August, 1967, and again in December, 1967, Pope appeared before this court at hearings on his request for federal habeas corpus relief. At those hearings the court observed that Pope had failed to appeal his criminal conviction to the Utah Supreme Court and had not yet petitioned the Utah state courts for a writ of habeas corpus. In this regard, the court carefully explained to Pope during the December, 1967, hearing that Pope had not yet exhausted his state remedies and should do so before proceeding in federal court (Tr. 12–13):

THE COURT: . . . Now, Mr. Pope, there is a jurisdictional problem here. This would have been heard, if I could have done it, long since here, but the jurisdictional problem is this: that the federal court can't entertain, doesn't have the power to entertain, a petition for habeas corpus, that petition claiming error in the state court conviction. You see, you were convicted in a state court of Utah, and you are here in federal court now. And there is a statute on the books, Congress has placed on the books, and there is a whole line of decisions of the Supreme Court of the United States which hold that a federal court may not entertain a petition for habeas to determine whether or not there was error in the state court proceeding resulting in your conviction, your commitment to the penitentiary, until the matter has been presented in the state courts. That has to be presented in the state supreme court and the state supreme court has to rule on it.

Now, if the state supreme court denies your petition, then you have exhausted your state remedies; and, if you complain of what they have done up there, you can come back here.

In May, 1968, this court released the first attorney appointed to assist Pope and appointed another. The second attorney conferred with Pope at the pris-

on, made an exhaustive review of the record, and researched points of law.

In July, 1968, the second attorney, in written reports mailed to Pope with copies to the court, concluded that Pope's allegations of unlawful search and seizure, self-incrimination, and double jeopardy did not provide the basis for a valid challenge to Pope's conviction and confinement.

In November, 1968, Pope submitted to this court a petition for federal habeas corpus relief, which stated that he had exhausted state remedies and, therefore, should be allowed to proceed in federal court to file a petition for habeas corpus. In explaining how he had exhausted state remedies, Pope said that he had submitted a petition for habeas corpus to the Utah Supreme Court attacking the alleged illegality of his conviction and confinement. That petition supposedly raised three claims of violation of Pope's rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. According to Pope, the Utah Supreme Court denied this petition on the ground that Pope should have raised, but failed to raise, these constitutional issues on direct appeal from his conviction.

However, Pope did not cite or include a copy of a decision or order by the Utah Supreme Court denying any state court petition for habeas corpus. Thus, it did not appear from the face of Pope's petition in federal court that he had in fact exhausted state remedies. Consequently, on January 29, 1969, this court after reading and reviewing the records before the court dismissed Pope's petition for habeas corpus. Thereafter, a notice of appeal was filed on behalf of Pope, and this court granted Pope leave to proceed on appeal in forma pauperis.

The Tenth Circuit Court of Appeals, in an opinion filed May 26, 1970 (Pope v. Turner, 426 F.2d 783), reversed and remanded for an evidentiary hearing, holding that:

. . . (T)he record and Pope's petition are sufficient to lead us to the definite conclusion that this case must be remanded for an evidentiary hearing. Several things do clearly emerge from the record: 1) Pope's petition for a writ of habeas corpus raises at least one substantial issue on alleged facts regarding whether he is in custody in violation of the Constitution; 2) Pope has never had a determination on the points in his petition after a hearing on the factual issues; 3) Pope has no remaining remedy in the courts of the State of Utah. (426 F. 2d 784–785.)

In light of subsequent litigation outlined below, it is important now to note that the Tenth Circuit Court of Appeals in May, 1970, held that Pope had "no remaining remedy in the courts of the State of Utah." The Tenth Circuit arrived at this "definite conclusion" despite their own observation that:

Although the time is not made clear by the record, it appears that at some point Pope petitioned the Supreme Court of Utah for a writ of habeas corpus. The disposition of that petition is not disclosed by the record except that Pope's present petition to the United States District Court states that the Utah Supreme Court dismissed the petition for the reason that Pope should have appealed on the grounds presented in his petition for habeas corpus. We can only conclude that the Supreme Court of Utah dismissed Pope's petition without a hearing since the contrary does not appear in the record before us. (426 F.2d 784.)

In other words, the Tenth Circuit Court of Appeals admitted that Pope's petition before this court failed to disclose the disposition of Pope's alleged petition to the Utah Supreme Court. Nevertheless, the Circuit held that one of the "definite conclusions" which "clearly emerge from the record" was that "Pope has no remaining remedy in the courts of the State of Utah", and

therefore the "case must be remanded for an evidentiary hearing".

On August 13, 1971, in accordance with the Tenth Circuit's mandate, an evidentiary hearing was held on Pope's petition for habeas corpus. At the evidentiary hearing mandated by the Tenth Circuit Court of Appeals, this court made the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

1. Counsel for the parties stipulate that those exhibits set forth in and made part of petitioner's motion for leave to file a petition for writ of habeas corpus, Civil No. C 107–70, were true and correct copies of the records of the Salt Lake City Court and the Third District Court in and for Salt Lake County, State of Utah.

2. It appears therefrom that William Pope was charged jointly with one Sandra Joyce Shaw of the first degree murder of John Wesley Wallace on or about the 6th day of July, 1964.

3. That Phil L. Hansen was on the 15th day of September, 1964, appointed as counsel by the City Court for both defendants.

4. At the time set for preliminary hearing on November 5, 1964, on motion of the counsel for the State, R. Dibblee, the petitioner was bound over to the District Court on the lesser included offense of voluntary manslaughter and remanded to the custody of the Sheriff; and the case against co-defendant Sandra Joyce Shaw, was dismissed.

5. That the criminal register of the Third District Court of Salt Lake County, State of Utah, No. 19042, shows that on November 12, 1964, the transcript was filed; that on November 25, 1964, the court (with no indication of the presence of either the defendant Pope or counsel Hansen) granted an ex parte motion of the District Attorney, and ordered that the matter be remanded to the City Court for a new complaint charging said William Pope with the crime of murder in the first degree, and further directed that a preliminary hearing be had on said charge.

6. That thereafter, in obedience of the order of the Third District Court, the City Court signed a new complaint, held a preliminary hearing thereon with counsel other than the originally assigned counsel, and "rebound" petitioner over to the District Court where he was tried and convicted of the crime of first degree murder, with his previous co-defendant appearing as a witness against him.

7. That §§ 77–17–1 and 77–17–2, Utah Code Annotated 1953, set forth the powers and duties of the District Court and District Attorney upon bind over to said District Court from a City Court or other magistrate.

8. There appears nowhere in the records of the Third District Court, including the register of actions, the motion of the District Attorney or the order of the Third District Court, Judge VanCott, District Judge, showing the appearance of either the defendant or his counsel before the District Court, or delivery to either the petitioner or his counsel of either the motion or the order involved.

The court having made the above its Findings of Fact now concludes as

## CONCLUSIONS OF LAW

1. That the Third District Court was acting in excess of its powers and jurisdiction in directing the City Court to cause a new complaint to be filed and hold a preliminary hearing on the charge of first degree murder.

2. The District Court had no power in the matter except to (a) order the District Attorney to file an information and proceed on the matter, or (b) order the District Attorney to enter a nolle prosequi, and on such motion to dismiss.

3. The defendant, having been recharged and prosecuted under an or-

der that the District Court had no power to make, was unconstitutionally deprived of due process of law.

4. Defendant, having been deprived of an appearance or hearing at the time of the apparent ex parte motion of the District Attorney before the District Court, was unconstitutionally deprived of effective counsel.

5. The defendant is entitled to have his petition for writ of habeas corpus granted.

Pope remained in the custody of the warden pending the outcome of the State's appeal to the Tenth Circuit Court of Appeals.

The Tenth Circuit Court of Appeals in an opinion filed June 14, 1972, (Pope v. Turner, 461 F.2d 644), reversed and remanded with instructions to dismiss without prejudice, holding that:

Since this (case) not only presents important questions of statutory interpretation of state law in the first instance but also may well contain overtones of state constitutional questions regarding judicial power directed against inferior courts and elected public officials within the State (and possibly a side issue of plea bargaining) we think that these issues should be presented to the Supreme Court of Utah for that court's consideration. The case presents a classic example of when a petitioner should be required to exhaust his state remedies in accord with 28 U.S.C. § 2254, a *procedure which our earlier mandate perhaps discouraged.* (461 F.2d 645, Emphasis added.)

In remanding to this court with instructions to dismiss without prejudice for failure to exhaust state remedies, the Tenth Circuit Court of Appeals failed to explain why in June, 1972, they believed that Pope had state remedies available to him, when in May, 1970, they believed that Pope had exhausted all state remedies. If the reason why Pope had exhausted state remedies in May, 1970, was that he had failed to present his constitutional claims on direct appeal to the Utah Supreme Court from his original conviction in state court, it is unclear how state remedies suddenly became available to him two years later.

Be that as it may, on July 10, 1972, this court filed the Tenth Circuit's mandate and dismissed Pope's petition without prejudice for failure to exhaust state remedies.

On February 20, 1973, Pope filed in state district court a petition seeking a writ of habeas corpus, pleading as the grounds thereof the same grounds set out in the Findings of Fact and Conclusions of Law entered by this court on August 13, 1971. Hearings were held before the Honorable D. Frank Wilkins on March 23, 1973, April 5, 1973, May 31, 1973, and June 7, 1973. On June 21, 1973, Judge Wilkins entered Findings of Fact and Conclusions of Law substantially similar to those entered by this court in August, 1971, and granted Pope's state court petition for a writ of habeas corpus.

Pope remained in the custody of the warden pending the outcome of the State's appeal to the Utah Supreme Court.

The Utah Supreme Court in an opinion filed December 18, 1973 (Pope v. Turner, 30 Utah 2d 286, 517 P.2d 536), reversed the ruling of the state district court and remanded with instructions to dismiss Pope's petition.

In their opinion the Utah Supreme Court reviewed the history of this litigation:

(Pope) filed a petition in the Federal District Court seeking his release on a writ of habeas corpus. The writ was denied based on oral statements and arguments. He appealed to the Circuit Court, which reversed and remanded the matter for a full evidentiary hearing. The Federal District Court then released the petitioner on a writ of habeas corpus, and the State appealed. Again the Circuit Court reversed, holding that Mr. Pope must file his petition in the State Court

and exhaust his remedies before proceeding in the Federal Court. However, permission was given Mr. Pope to renew his petition in the Federal Court after the Utah Supreme Court had made its determination on the matter. In other words, we are given the satisfaction of knowing that that which we do in this matter is of no consequence whatsoever and that the ruling of the Supreme Court of a sovereign state of the Union is subject to the whim of the inferior district courts in the Federal system. (517 P.2d 537.)

The Utah Supreme Court reversed the state district court's conclusion that the Third Judicial District Court acted in excess of its power and jurisdiction when on November 25, 1964, that court granted the district attorney's ex parte motion and signed an order remanding to City Court the manslaughter complaint and directing the City Court to file a first degree murder complaint against Pope. In reversing, the Utah Supreme Court held that the ex parte procedure was in "substantial compliance" with Utah law. (517 P.2d 538.)

█ The Utah Supreme Court's determination that the ex parte procedure was in "substantial compliance" with Utah law forecloses Pope's claim in federal court that the ex parte procedure was void under Utah law. This determination forecloses Pope's due process claim in federal court, because Pope framed that claim solely as a jurisdictional claim; i. e., he argued that the ex parte procedure was void under Utah law and, therefore, the Third Judicial District Court lacked jurisdiction to convict him of murder. The Utah Supreme Court's determination that the ex parte procedure was in "substantial compliance" with Utah law means that the Third Judicial District Court did in fact possess jurisdiction to convict Pope of murder.

The Utah Supreme Court also reversed the state district court's conclu-

sion that Pope was denied his right to effective assistance of counsel at a critical stage of the criminal proceedings against him when on November 25, 1964, the Third Judicial District Court granted the district attorney's ex parte motion remanding the case to City Court and directing that a new complaint be filed charging Pope with first degree murder. In reversing, the Utah Supreme Court held that "since the dismissal of a criminal charge does not prejudice a defendant, we do not regard this (ex parte) procedure under the circumstances of this case as being prejudicial." (517 P.2d 538.)

The Utah Supreme Court's opinion, however, does not foreclose Pope's claim that he was denied the effective assistance of counsel, as guaranteed under the Sixth and Fourteenth Amendments to the United States Constitution. The Utah Supreme Court failed to determine whether the ex parte procedure occurred at a critical stage in the criminal proceedings against Pope. Therefore, the Utah Supreme Court failed to determine whether Pope had a constitutional right to effective assistance of counsel at that stage of the criminal proceedings.

█ In addition, the Utah Supreme Court failed to explain why Pope was not prejudiced by the ex parte nature of the proceedings. The Utah Supreme Court apparently regarded the ex parte procedure as merely a dismissal of the manslaughter charges against Pope. The record, however, shows that the ex parte procedure was also an order to the City Court to return a first degree murder complaint against Pope. Pope surely had a vital interest in being represented by effective counsel at that stage in the proceedings to hear and answer the arguments of the district attorney.

Pope should be permitted to present his Sixth Amendment claim to this court in a petition for federal habeas corpus relief.

Therefore, it is ordered that Pope is hereby authorized to proceed in forma

pauperis to file his petition for a writ of habeas corpus, and the Clerk is directed to file that petition without prepayment of fees, costs or security therefor.